UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAMELA HINZ, | Case No.: 10-CV-03633-LHK |
| Plaintiff, | ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| HEWLETT PACKARD COMPANY DISABILITY PLAN, | (re: dkt. #40, 45) |
| Defendant. | |

In this action, each party has filed a motion for summary judgment under Federal Rule of Civil Procedure 56. Those motions are currently set for a hearing on August 25, 2011. The Court deems these motions appropriate for resolution without oral argument, and vacates the August 25, 2011 motion hearing and case management conference. *See* Civ. L.R. 7-1(b). For the reasons set forth below, the Court DENIES both parties' motions for summary judgment.

**I. BACKGROUND**

Plaintiff filed suit on August 17, 2010 under the Employment Retirement Income Security Act of 1974, 29 U.SC. §1001 *et seq*. ("ERISA"). *See* Compl. Plaintiff became an employee of the Hewlett-Packard Company in August 1982, and is a beneficiary of Defendant, the Hewlett-Packard Company Disability Plan. *Id*. at ¶¶ 7-8. Beginning in or around 1996, Plaintiff began to suffer pain in her forearms, and was eventually diagnosed with chronic repetitive stress injury in her wrist and fingers. Plaintiff submitted a worker's compensation claim that resolved on July 24, 2001 when Plaintiff and Hewlett-Packard ("HP") stipulated that Plaintiff had a permanent disability of

1

52% as of October 8, 1991 based on injuries to Plaintiff's hands, wrists, and cervical spine. *See* Administrative Record ("AR") at 300. After 2001, Plaintiff continued to work at HP with limitations regarding lifting more than three pounds and sitting or driving more than two hours. AR 301. Plaintiff alleges that she became fully disabled on or about May 1, 2005, with injuries to her hands, wrist, and cervical spine due to long hours sitting and working on a keyboard, combined with stress, depression, and anxiety from the outsourcing of her job. Compl. at ¶¶ 10-12. Plaintiff received short-term disability benefits from May 1, 2005 through October 30, 2005. *Id*. at ¶ 13.

Plaintiff's claim for long-term disability benefits under the Plan was approved on December 23, 2005. *Id*. From December 23, 2005 through August 15, 2009, Sedgwick CMS ("Sedgwick"), the Plan's claims administrator, periodically reviewed and approved Plaintiff's claim for long-term disability benefits. *Id*. at ¶ 14. Plaintiff initially returned to work on August 1, 2005 with various accommodations designed to limit extensive use of her hands and wrists, including speech recognition software, limited requirement to produce written reports, and telecommuting. AR 592. However, Plaintiff's return to work did not last long, apparently due to extreme anxiety and depression. On November 28, 2005, Plaintiff underwent an independent psychiatric examination ("IPE") with Dr. Thomas J. Becker, and in August 2006, had a second IPE with Dr. Saad A. Shakir. Based on both doctors' finding that Plaintiff was unable to perform her customary work, Defendant approved Plaintiff's claim for long-term benefits.

On January 3, 2007, Defendant informed Plaintiff that her initial 24-month period of disability would end on May 1, 2007, as benefits for disability caused by a nervous or mental disorder had a strict two-year limit. AR 363-363. However, Defendant also allowed Plaintiff an opportunity to provide any additional diagnoses that contributed to her disability. Plaintiff responded with: (1) an explanation of her upper extremity injuries and limitations as noted in her worker's compensation stipulation of a 52% permanent disability; and (2) an additional evaluation by her chiropractor Dr. Thomas Antone that Plaintiff was unable to work. AR 305-308. In addition, Plaintiff provided Defendant with the results of her August 14, 2007 MRI, which found that Plaintiff had "[s]ignificant degenerative disease most severe in C4-C5 with significant nerual foraminal stenosis from the degenerative osteophytes" and that were "also degenerative disc

2

1  disease at C5-C6 and C6-C7." AR 157.  Again, Defendant extended Plaintiff's long-term disability

2  benefits.

3  The same pattern continued through 2008 to mid-2009.  In February and April 2008,

4  Sedgwick reviewed Plaintiff's medical records, including new evaluations from Plaintiff's

5  chiropractors, and extended Plaintiff's long-term disability benefits.  In February and August of

6  2008, Plaintiff's then-current chiropractor, Lynn Peterson, D.C., provided Sedgwick with reports

7  diagnosing Plaintiff with degenerative disc disease, chronic tendonitis in her elbow and wrists, and

8  significant spurring in her spine.  AR. 217.  On September 5, 2008, Sedgwick extended Plaintiff's

9  long-term disability benefits through March 2009, but also informed Plaintiff that "if there is no

10 marked improvement," it would recommend that Plaintiff undergo an independent medical

11 examination ("IME") by a neurosurgeon.  AR 20.

12 In April 2009, a representative of the Plan sent Plaintiff's medical records for review by a

13 Registered Nurse ("RN").  The RN review concluded that "the medical information does not

14 substantiate disability at this time."  AR 22.  On May 11, 2009, after being advised by Defendant

15 that her medical records were insufficient to substantiate a permanent disability, Plaintiff was

16 evaluated by Dr. L. Neena Madireddi.  Upon a review of Plaintiff's medical records and a physical

17 examination, Dr. Madireddi concluded:

> Given her multiple medical problems, Ms. Hinz clearly cannot use her upper extremities for any type of sedentary work due to her multiple upper extremity disabilities.  In addition, she cannot perform a light, medium, or heavy work job since she cannot be upon her feet due to her lower extremity condition.   It is my medical opinion that she is permanently disabled from gainful employment at this time and she should be considered permanently disabled and be eligible for long term disability benefits.

22 AR 132.  On June 16, 2009, Plaintiff provided a new report from an April 15, 2009 appointment

23 with her chiropractor, Anne M. Stephanson, D.C.  The report noted Plaintiff's complaints of pain in

24 her spine and neck, and assessed Plaintiff with degeneration of cervical disc.  AR 114-115.

25 Sedgwick extended Plaintiff's long-term disability benefits to August 1, 2009, but still continued

26 its review of Plaintiff's medical documentation of disability.  AR 15.

27 By a letter dated August 20, 2009, Sedgwick advised Plaintiff that her claim for long-term

28 disability benefits was denied as of August 16, 2009.  Sedgwick concluded that Plaintiff was not

"totally disabled" under the terms of the Plan because Plaintiff's medical documents failed to validate her inability to engage in full-time regular work. AR 86-90. Defendant based this denial on the report of Dr. Robert Y. Pick, a member of Elite Physicians LTD. After reviewing Plaintiff's administrative file, but *not* examining Plaintiff herself, Dr. Pick concluded in a four-page report that Plaintiff's "multiple diagnoses are not supported by objective medical information." AR 96-100. The August 20, 2009 letter also notified Plaintiff that if she did not receive notice of Sedgwick's decision by the end of the 90-day period, "the appeal can be considered denied."

Plaintiff appealed the denial on January 20, 2010. In that appeal, Plaintiff submitted additional medical information and documents in support of her claim. Specifically, Plaintiff submitted: (1) an October 12, 2009 note from Rachel Abrams, M.D., in which Dr. Abrams opined Plaintiff was completely disabled, assessing Plaintiff with severe lateral epicondylitis, severe osteoarthritis and spurring, and bulging discs in her spine (AR 51-54); and (2) a report of clinical findings from Plaintiff's chiropractor, John Amaral, D.C., showing several areas of spinal tension and significant restrictions on the cervical spine range of motion. AR 55-60.

Sedgwick acknowledged receipt of the appeal in a letter dated to Plaintiff on February 9, 2010. AR 50. However, Sedgwick did not respond to Plaintiff's appeal. Plaintiff filed suit on August 10, 2010.

## II. LEGAL STANDARDS

### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(b), (c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *See id.* "[A]ll justifiable inferences must be drawn in [the nonmovant's]

favor." *See United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Liberty Lobby*, 477 U.S. at 255).

The moving party bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *see also Liberty Lobby,* 477 U.S. at 250. The opposing party need not show the issue will be resolved conclusively in its favor. *See Liberty Lobby,* 477 U.S. at 248-49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See id*.

### B. Standard of Review under ERISA

The default standard of review applicable to a plan administrator's decision to deny benefits is de novo. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *see also Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir. 2006) (en banc). However, if the plan unambiguously gives the plan administrator discretion to determine a plan participant's eligibility for benefits, then the standard of review shifts to abuse of discretion. *Abatie*, 458 F.3d at 963. Here, there is no dispute that the Plan confers discretionary authority to "determine eligibility for Plan participation and entitlement to Plan benefits in accordance with the terms of the Plan."

The Ninth Circuit in *Abatie*, however, also held that "procedural irregularities" should be taken into consideration when deciding upon the standard of review, and that the benefits denial "should be reviewed de novo if 'an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well.'" *See Abatie*, 458 F.3d at 971. The court cautioned, however, that such de novo review is only appropriate in a "rare class of cases," and "a procedural irregularity in processing an ERISA claim does not usually justify de novo review." *Id.* at 972. Finally, the *Abatie* court noted that, even if the review is for abuse of discretion, "[a] procedural irregularity, like a conflict of

interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." *Id.*

Since the Ninth Circuit's en banc decision in *Abatie*, the Supreme Court has refined the standard of review analysis in ERISA cases clarifying that "the conflict of interest must be 'weighed as a factor' but does not convert abuse of discretion review into de novo review. The weight given the factor varies." *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-14 (2008); *see also Conkright v. Frommert*, 130 S. Ct. 1640, 1646 (2010) (confirming that, under *Glenn*, "when the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict"). In response to the Supreme Court's opinion in *Glenn*, the Ninth Circuit has recently issued its own clarification. *See Salomaa v. Honda Long Term Disability Plan*, 2011 U.S. App. LEXIS 4386 (9th Cir. Mar. 7, 2011). In *Salomaa*, the Ninth Circuit explained the meaning of "abuse of discretion" as whether the court is "left with a definite and firm conviction that a mistake has been committed." *Id.* at *24-25. In addition, the Ninth Circuit stated that "deference to the plan administrator's judgment does not mean that the plan prevails." *Id.*

### III. DISCUSSION

In *Salomaa*, the Ninth Circuit reversed the district court's decision in favor of the administrator after a trial on the administrative record and ruled that an "administrator abuses their discretion if their decision was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record,' and a 'higher degree of skepticism is appropriate where the administrator has a conflict of interest.'" *Salomaa*, 642 F.3d at 676. Faced with cross-motions for summary judgment, the standard the Court applies here is whether there is evidence in the administrative record from which a reasonable fact finder could be left with a definite and firm conviction that Defendant committed a mistake in denying Plaintiff's claim for benefits. As the Court held in its March 20, 2011 Order, "The Court will review Plaintiff's claim under an abuse of discretion standard. Because of Defendant's actions and the serious procedural irregularity involved, however, the Court will review Defendant's decision to terminate Plaintiff's long-term disability benefits with a greater degree of skepticism and will consider additional evidence

6

1   Plaintiff submitted to Defendant in connection with her notice of appeal." *See* March 20, 2011

2   Order at 7.

3   The Ninth Circuit's decision in *Salomaa* provides guidance on the factors district courts

4   may consider when weighing abuse of discretion:

> In this case, the plan abused its discretion. Its decision was illogical, implausible, and without support in inferences that could reasonably be drawn from facts in the record, because: (1) every doctor who personally examined Salomaa concluded that he was disabled; (2) the plan administrator demanded objective tests to establish the existence of a condition for which there are no objective tests; (3) the administrator failed to consider the Social Security disability award; (4) the reasons for denial shifted as they were refuted, were largely unsupported by the medical file, and only the denial stayed constant; and (5) the plan administrator failed to engage in the required "meaningful dialogue" with Salomaa.

642 F.3d at 676.

In the instant case, a reasonable fact finder could be left with a definite and firm conviction that a mistake was made. A fact finder could reasonably conclude that Defendant's decision was illogical, implausible and without support in inferences that could reasonably be drawn from facts in the record, for at least four reasons. First, Defendant's conclusion that Plaintiff's multiple diagnoses were not supported by "objective medical information" is refuted by substantial evidence in the record. Objective medical information includes Plaintiff and HP's July 24, 2001 stipulation resolving Plaintiff's worker's compensation claim. That stipulation acknowledges Plaintiff's permanent disability of 52% as of October 8, 1991 based on injuries to Plaintiff's hands, wrists, and cervical spine. AR 300. Objective medical information also includes the results of Plaintiff's August 14, 2007 MRI, which found that Plaintiff had "[s]ignificant degenerative disease most severe in C4-C5 with significant neural foraminal stenosis from the degenerative osteophytes" and that were "also degenerative disc disease at C5-C-6 and C6-C-7." AR 157.

Second, Defendant's conclusion that Plaintiff is able to engage in full-time sedentary work activities without restrictions or limitations is not supported by the record. As Defendant is well aware, since 2001, Plaintiff worked at HP with significant limitations regarding lifting more than three pounds and sitting/driving for more than two hours. Moreover, when Plaintiff returned to work on August 1, 2005, she only did so with various accommodations designed to limit extensive

1     use of her hands and wrists, including speech recognition software, limited requirement to produce

2     written reports, and telecommuting. AR 592.

3           Third, Defendant did not conduct an in-person examination of Plaintiff, although Defendant

4     repeatedly notified Plaintiff that Defendant would do so in order to evaluate Plaintiff's medical

5     condition. For example, as late as September 5, 2008, Sedgwick extended Plaintiff's long-term

6     disability benefits through March 2009, but also informed Plaintiff that "if there is no marked

7     improvement," it would recommend that Plaintiff undergo an independent medical examination

8     ("IME") by a neurosurgeon. AR 20. On May 11, 2009, Plaintiff's examining doctor, Dr.

9     Madireddi, concluded that, in her "medical opinion," Plaintiff is "permanently disabled from

10    gainful employment at this time and she should be considered permanently disabled and be eligible

11    for long term disability benefits." AR 132. Despite Defendant's prior representations about the

12    use of an IME and despite Dr. Madireddi's medical opinion, Defendant did not evaluate Plaintiff's

13    medical condition by use of an IME prior to denying her request for long term disability benefits.

14          And fourth, the record contains extensive medical documentation from multiple medical

15    professionals, including medical doctors and chiropractors, that Plaintiff suffers significant cervical

16    spine and upper extremity limitations, with numerous examining doctors opining that Plaintiff is

17    totally disabled. Simply put, every doctor that examined Plaintiff found that she had significant

18    cervical and upper extremity limitations, and no examining doctor concluded that she was not

19    disabled. It is especially disconcerting that, after four years of examining doctors and chiropractors

20    coming to the conclusion that Plaintiff was disabled, Defendant changed course and relied on an

21    external records-review. *See Landree v. Prudential Ins. Co. of Am.*, No. 10-CV-05353-RBL, 2011

22    U.S. Dist. LEXIS 86800, *31 (W.D. Wash. Aug. 4, 2011) ("The Court has yet to hear an

23    explanation for the external paper review that makes any sense. There is at least a genuine

24    question of fact as to whether Dr. Syrjamaki was an objective reviewer or a heavy hitter brought in

25    by Prudential to give the Company the answer it wanted to hear.").

26          In light of the heightened skepticism due to the procedural irregularities involved in

27    Defendant's denial of Plaintiff's benefits and the conclusion that a reasonable fact finder could be

28    left with a definite and firm conviction that a mistake was made, the Court must deny both parties'

8
Case No.: 10-CV-03633-LHK
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

motions for summary judgment.[1]  Instead, the Court will hold a bench trial pursuant to Federal Rule of Civil Procedure 52 based on the administrative record, the additional evidence submitted on Plaintiff's appeal not considered by Defendant, the parties' trial briefs, and argument from counsel.  A bench trial will ensure a full inquiry into the entire record, including evidence submitted on Plaintiff's appeal but not considered by Defendant, without running afoul of the traditional summary judgment rules that evidence outside of the administrative record should be viewed in the light most favorable to the non-moving party.  *See Nolan v. Heald College*, 551 F.3d 1148, 1150 (9th Cir. 2009) (reversing grant of summary judgment where "without evidentiary hearing or bench trial, the district court considered and rejected Nolan's bias argument by weighing the documentary evidence of bias, and ignoring the protections that summary judgment usually affords the non-moving party.  Though the district court would have been permitted to weigh such evidence after bench trial, weighing that evidence on summary judgment was improper in this case where the evidence was outside of the administrative record.").

## IV.  CONCLUSION

For the reasons stated above, both parties' motions for summary judgment are DENIED.  The August 25, 2011 motion hearing and case management conference are VACATED.  As previously set, the Court will hold a bench trial pursuant to Federal Rule of Civil Procedure 52 on Tuesday, November 8, 2011 at 1:30 p.m.  The Court sets the following revised briefing schedule: opening briefs are due by Friday, September 23, 2011, opposition briefs are due by Friday, October 7, 2011, and reply briefs are due by Friday, October 14, 2011.  The Court will hold a pretrial conference on Wednesday, October 26, 2011 at 2:00 p.m.  The parties should familiarize

---

[1] Although Plaintiff filed her own motion for summary judgment, in her briefing, Plaintiff essentially concedes that this case should proceed to a bench trial.  *See* Pl.'s Reply I/S/O Pl.'s Mot. for Summary Judgment at 3 ("In communicating with counsel for Defendant during the case management process, Plaintiff's position was that this case should be adjudicated in a bench trial, and is not appropriate for resolution by summary judgment.  However, having learned that Defendant would be filing their Motion for Summary Judgment, Plaintiff felt compelled to file her Motion.").  In light of the finding above that a reasonable fact finder could be left with a definite and firm conviction that a mistake was made, the Court agrees with Plaintiff that this case should proceed to a bench trial.

9

Case No.: 10-CV-03633-LHK
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

themselves with the undersigned's Bench Trial Standing Order available on the Court's website.

**IT IS SO ORDERED.**

Dated: August 23, 2011

_____
LUCY H. KOH
United States District Judge